# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 5, 2013

No. 12-20798
Summary Calendar

Lyle W. Cayce
Clerk

EULA MACK,

Plaintiff–Appellant

v.

JOHN L. WORTHAM & SON, L.P., also known as J. Wortham, L.L.C., also known as Wortham Insurance & Risk Management and Its Agents and Assigns,

Defendant–Appellee

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-04881

---

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

This case arises out of two employment discrimination claims—one Title VII and one ADEA—made by Plaintiff–Appellant Eula Mack ("Mack") against her former employer, Defendant–Appellee John L. Wortham & Son, L.P. ("Wortham"). Because we determine that there is insufficient evidence from

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

which a reasonable trier of fact could find for Mack, we AFFIRM the district court's grant of summary judgment for Wortham on all claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2005, Mack was hired by Wortham as an administrative assistant to Peter Johnston in the Commercial Accounts Department. She held this position for one month, at which point Johnston decided she was not a good match for the job and suggested Mack apply for an open position in the Risk Management Department. Mack was offered a position as an assistant to Jim McCann and Bart Cannon in the Risk Management Department, which she accepted in December of 2005. Mack remained in the Risk Management Department until 2006, when Mack's supervisor decided that there was no longer a place for her there. Mack's supervisor then offered her the opportunity to transfer to the Marine Department, and she began work in the Marine Department in late 2006.

The parties disagree about the events leading to Mack's 2006 departure from the Risk Management Department. Mack alleges that Cannon had stopped assigning work to her, prompting her to ask to be trained for Joleen Norcini's position in anticipation of Norcini's resignation. McCann denied Mack's request and picked another employee, Jacqueline Huerta, for the position. Norcini, however, decided to remain in the Risk Management Department. According to Wortham, in light of this change in circumstances, McCann decided to allow Huerta and Norcini to remain in the department and terminate Mack. Mack alleges that McCann "coerced" her to quit by offering her severance pay and trying to help her find a new job. She also alleges that the partners did not want clients to see an African-American woman sitting at the front desk. In contrast, Wortham claims that Mack was transferred because her lack of necessary computer skills had become apparent and because she was offered a more appropriate position in the Marine Department instead.

12-20798

Mack alleges racial, sex, and age discrimination on the parts of Johnston, McCann, and Cannon.  She admitted in her deposition that she never heard any of these individuals make discriminatory remarks based on race, sex, or age. She testified that she believed Johnston discriminated against her by refusing to give her work, but simultaneously claimed that he used a "nasty tone" when giving assignments to her.  She alleged that McCann's denial of her request for training and Cannon's failure to assign work to her were discriminatory acts. She further testified that she felt these supervisors treated her differently than the other assistants but admits that all of the other assistants were female and concedes that she was replaced by another African-American woman in the Risk Management Department.

In 2006, Mack was transferred to an administrative assistant position in the Marine Department, where she worked primarily for Phil Dunn and Jerry Shelton until 2009.  During this time, Mack was frequently late to work, even after being reprimanded and counseled by Charles Flournoy, the Vice-Chairman of the company, on multiple occasions.[1]  On March 4, 2008, Mack was placed on probation by Al Hahn, the human resources manager.  His memorandum to Mack explained that, because of her habitual tardiness and refusal to comply with the company's rules despite several counseling sessions, she would be placed on probation through April 30, 2008, and that during this period she was required to report to work by 8:15 a.m. on at least 80% of scheduled work days. The memorandum also made clear that if she did not comply with these requirements she would be terminated at the end of the probationary period.

During the probationary period Mack complied with the attendance

---

[1] According to several e-mails sent in October 2006 between Flournoy and Al Hahn, the human resources manager, Mack regularly arrived to work twenty to thirty minutes late, and continued to arrive late following conversations with both Dunn and Flournoy.  Wortham provided several of Mack's time sheets which indicate tardiness on thirteen work days in August 2007, six work days in November 2007, and over twenty work days in January and February of 2009.

3

requirements, but in January 2009 her supervisor documented that she had reverted to habitual tardiness. From January 5, 2009, through February 9, 2009, she was late to work every day.

In addition to being tardy, Mack was insubordinate and failed to comply with the company's overtime policy. In October 2006, Flournoy informed her that she needed to seek permission before working overtime. In March and November 2007, as well as in April 2008, Mack worked overtime without permission and in April 2008 was issued a warning by Flournoy to end this practice, which she disregarded. In November 2008 Mack again submitted overtime hours that she had worked without a supervisor's prior approval.

On January 6, 2009, another assistant, Leticia Martinez, informed Flournoy that Mack was inaccurately filling out checklists, indicating that she had completed tasks that had not been completed. In response, Flournoy sent an e-mail to the entire department reminding them of the proper procedure.

Mack alleges that she was also discriminated against by Rebecca Cox, Tobin Carlson, and Gavin Hurd. According to Mack, on June 10, 2008, Cox "harassed" her by singling her out over email. She does not allege specific facts or provide the email to which she refers. Mack claims that Carlson accused her of losing documents and defamed her via e-mail. However, again, she does not allege specific facts or provide the e-mail to which she refers. She also alleges that on December 22, 2008, Hurd demanded that she complete a certificate request for which she lacked the necessary information and yelled at her in the presence of the other assistants. Mack claims that she was then wrongfully reprimanded for insubordination.

According to Flournoy's memo of the same date regarding this exchange, on Friday, December 19, 2008, Hurd received a call from Wortham's Dallas office requesting a certificate of insurance for a client. Hurd pulled the file and placed the certificate request in the "Urgent Stack." On Friday afternoon, Mack picked

up the request, saw that Hurd had not yet filled out the processing form with the information needed to complete the certificate, put a note on the file to complete the form, and placed the file on Carlson's desk, even though, according to Flournoy, it would have been clear to her that Hurd was the one working on the file. On Monday, December 22, 2008, Hurd received a follow-up call for the certificate and went to search for the file, but could not locate it in the certificate stack behind Mack's desk. He asked if anyone had seen the file, but the other assistants in the area said they had not, and Mack did not respond. Hurd returned to his office to look for the certificate, but could not find it, so he returned to the secretarial pool and asked again if anyone had seen the file. Again, the other secretaries told him that they had not seen it and Mack did not respond.

Hurd continued to search for the file in the file room and at the desks of several secretaries, including Mack's. As he was walking back to his office to search it again, he spotted the file on Carlson's desk. He read the note from Mack requesting that the processing form be filled out. Hurd filled out the form, returned the file to Mack, and told her to complete the certificate. Mack complained that Hurd should not speak to her with such disrespect, and Hurd repeated his instruction to complete the certificate. Mack then responded that she was not going to work on the certificate and that Hurd should do it himself. Hurd explained that he did not know how to prepare the certificate and that this was a secretarial task. Mack responded that he should perform the work himself if he wanted it done. Hurd then ended the discussion and went to his office. He returned to the secretarial pool after a few minutes and told Mack that if she was still unwilling to prepare the certificate he would reassign it. Mack agreed and Hurd asked her to return the file to him. She responded that she did not have the file. He asked her where it was, and she told him that it was on the counter behind her desk and that he should "fetch" it himself if he wanted it.

5

Hurd retrieved the file and gave it to Flo Tuten, another assistant, to complete.

Later that day, Flournoy reprimanded Mack for her insubordination towards Hurd. Mack contends that she was reprimanded and treated differently on the basis of her age, race, and sex. She further claims that no other individuals were reprimanded for their alleged misconduct towards her, and that she would have been treated differently had she been of a different race, age, or sex. In February 2009, Mack was terminated from Wortham.

The parties disagree as to the circumstances surrounding Mack's termination from the company. Mack claims that she was terminated because of her race, age, sex, and culture, and alleges that she was replaced by a younger Hispanic female who was the friend of two other Hispanic employees who worked in the Marine Department. She alleges that this individual, Dreana Lemon, had been employed by Wortham for less than one year, and that Lemon spent part of this time period on maternity leave, but was allowed to remain at Wortham when Mack was terminated. Wortham's version of the events differs. Wortham alleges that in early 2009, one of the company's largest clients sold the majority of its properties, depriving the Marine Department of a significant portion of its business. The department's increased use of an automation system further reduced the workload. Two female employees in the department had been on maternity leave, and when one of them returned, the department was operating efficiently with one employee still out on leave, such that if the other employee returned from leave, the department would be overstaffed. Flournoy decided one support staff member would be let go from the department and asked the non-support staff to rank all of the employees in the department. Because every staff member ranked Mack as the lowest-performing employee and because she was one of the highest-paid assistants, Flournoy decided to terminate her. Her position has not been filled by anyone else.

Mack filed a charge of discrimination based on race and age with the

EEOC on March 24, 2009. The charge states that the discrimination began January 1, 2008 and ended February 13, 2009, and that she was laid off while another female assistant with less seniority was allowed to remain in her position. The EEOC mailed the dismissal and notice of rights to her on August 30, 2010.

She filed her complaint on December 2, 2010, alleging ongoing discrimination based on race, sex, age, and culture in each department in which she worked, and requesting $400,000 in compensatory damages and $1,000,000 in punitive damages. She alleges that she was terminated because of her race, sex, age, and culture and replaced by a younger Hispanic female with less seniority. She also includes a breach of contract claim, arguing that on December 2, 2005, she entered into a written contract with the company for annual performance reviews to determine pay increases, but that during her three years of employment she received only one review.

The district court granted Wortham's motion for summary judgment on all claims and issued a final judgment, dismissing the action with prejudice, on November 7, 2012. The court found that Mack's sex and culture discrimination claims were barred by her failure to meet the Title VII exhaustion requirement before filing suit. Mack's race and age discrimination claims arising out of events that occurred prior to May 28, 2008 were found to be time-barred by the EEOC 300-day filing limitation. With respect to her Title VII and ADEA claims that were not time-barred, the court determined that she had failed to raise a factual dispute and that Wortham had proffered a legitimate, nondiscriminatory justification for her termination. As to the breach of contract claim, the court decided that, because the alleged contract lacked essential terms and violated the statute of frauds, no valid contract was created as a matter of law.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying

the same standards as the district court. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 257 (5th Cir. 2009). Summary judgment is appropriate where the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(a)). In reviewing the record, all facts and inferences are construed in the light most favorable to the non-movant. *Lewis v. Ascension Parish Sch. Bd.*, 662 F.3d 343, 347 (5th Cir. 2011). However, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." *Weber v. Roadway Express, Inc.,* 199 F.3d 270, 272 (5th Cir. 2000).

## III.  DISCUSSION

Mack argues that summary judgment was improper on several grounds. First, Mack alleges that the district court failed to consider evidence presented in her response to Wortham's motion for summary judgment. She argues that the court's failure to address issues she presented demonstrates a lack of consideration. Second, Mack contends that the district court granted summary judgment based on hearsay, referring to a statement made by another Wortham employee, Leticia Martinez. Third, she argues that her claims of discrimination arising out of acts that occurred in 2005, 2006, and 2007 are not barred by the EEOC 300-day limitation by virtue of the continuing violations doctrine, which allows the court to consider violations that occurred outside of the period of limitations if the plaintiff can show that these prior acts were part of a continuing system of discriminatory practices. She also alleges that her claims are not barred because she was subjected to a hostile work environment, another exception to the 300-day limitation. Mack also appeals the district court's finding that there was no breach of contract, arguing that the 2005 e-mail constituted a contract.

A.    **Consideration of Evidence**

With respect to the district court's consideration of evidence, Mack argues that  ignored evidence she submitted in her response to Wortham's motion for summary judgment and instead relied on Wortham's submissions regarding Mack's 2002 termination from a prior position at a law firm for tardiness and failure to complete work assignments.  Mack submitted the declaration of John Banks, Jr., a partner at the previous firm, dated September 4, 2012, which states that Mack voluntarily left her position at the firm and was not terminated, in addition to her own declaration in which she states that she left voluntarily.  Wortham, however, contends that Mack was terminated for tardiness and refusing to complete assignments.  Wortham presented several related pieces of evidence: a memorandum dated August 30, 2002, regarding Mack's first sixty days of probationary employment at the prior firm, written by John Banks, Jr.; a performance review dated July 2, 2004, detailing Mack's unapproved absences and frequent tardiness, and stating that Mack had been told that two more absences would result in her immediate termination; and several pages of the firm's records documenting Mack's tardiness and absences.

The district court was not required to address each piece of evidence Mack presented.  The court is required to state "the reasons for granting or denying the motion" for summary judgment, but does not need to address every statement made by the non-movant.  Fed. R. Civ. P. 56(a).

Furthermore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citing Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2725 (3d ed. 1983)).  Because the question of whether Mack was terminated from her previous position is unrelated to Mack's termination from Wortham, it does not preclude summary judgment.  Regardless of the amount of consideration the district court gave to John Banks,

Jr.'s affidavit, the district court's basis for granting summary judgment was not Mack's termination from a previous job. Furthermore, her performance in prior positions, however satisfactory, does not create a factual dispute as to her performance at Wortham. The fact that an employee left a previous position voluntarily is not evidence that she should not be terminated from future positions.

## B.     Mack's Hearsay Claim

Mack contends that the district court improperly awarded summary judgment based on hearsay, referring to a statement made by another Wortham employee, Leticia Martinez, to Flournoy that Mack had failed to follow established procedures and had incorrectly filled out a checklist. We reject this argument because the district court did not consider Martinez's statement but rather relied on documentation submitted by Wortham, including the checklist Mack improperly completed, to determine that Mack had disregarded the company's procedures. Martinez did alert Flournoy that Mack was marking uncompleted tasks as completed, but the record demonstrates that Mack was disciplined based not on Martinez's statement, but on the actual document at issue. Wortham also provided a memorandum from Flournoy to Hahn dated January 6, 2009, indicating that Martinez had discovered that Mack had failed to follow the established procedures for these checklists. Any consideration made by the district court of this violation was made based on the documentation submitted by Wortham. Consequently, we agree with the district court that it was appropriate to consider evidence of Mack's failure to follow established procedures and reject Mack's supposed hearsay claim.

## C.     Claims Barred by 300-Day Limitation for Filing a Charge of Discrimination

Because all of the alleged unlawful acts that occurred in the Risk

Management and Commercial Accounts Departments, as well as some that occurred in the Marine Department, took place outside of Title VII's 300-day limitation period, all of Mack's claims arising out of those events are barred.

Under Title VII and the ADEA, a discrimination claim not brought within 300 days of the alleged discriminatory act is time-barred. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); *Washington v. Patlis*, 868 F.2d 172, 175 (5th Cir. 1989). To argue that discriminatory acts that occurred outside of the 300-day period should be considered, Mack raises two exceptions to this rule: the continuing violations doctrine and the hostile work environment theory. Although these exceptions, if applicable, allow a plaintiff to bring claims that would otherwise be time-barred, we agree with the district court that neither applies to Mack's case.

The continuing violations doctrine "relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Messer v. Meno*, 130 F.3d 130, 134–35 (5th Cir. 1997). If the plaintiff can demonstrate that the discrimination manifested itself over time rather than in a series of discrete acts, actions that would otherwise be time-barred may be considered by the court. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (citing *Huckabay v. Moore*, 142 F.3d 233, 238–39 (5th Cir. 1998) (holding that whereas demotion and failure to promote are discrete events that should put an employee on notice that a cause of action has accrued, racial harassment manifested through unequal treatment of employees and fostering an atmosphere of racism weas sufficient to invoke the continuing violations doctrine)). However, where the employee complains of "separate and varied acts and decisions that occurred at different times," and the record does not confirm "an organized or continuing effort to discriminate," this Court has declined to apply the continuing violations doctrine. *Frank*, 347 F.3d at 136.

Even if specific actions were discriminatory, this Court has stated that a plaintiff may not rely on the continuing violations doctrine "to resurrect claims about discrimination concluded in the past, even though its effects persist." *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 979 (5th Cir. 1983) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980)). Thus, though the effects of an allegedly discriminatory act may persist, a claim based on that act is not actionable under Title VII if the act occurred more than 300 days before the charge was filed. *See Del. State Coll.*, 449 U.S. at 257–59 (holding that the denial of tenure was the alleged discriminatory act from which the 300-day limitation began, although the ultimate harm that resulted from the denial occurred later).

To determine whether alleged discriminatory acts are related closely enough to constitute a continuing violation, this Court has used the following three non-exhaustive factors: (1) subject matter, (2) frequency, and (3) degree of permanence. *Berry*, 715 F.2d at 981. If the alleged acts involve the same type of discrimination, occur frequently, and indicate to the employee that the continued existence of adverse consequences is likely, it is probable that they rise to the level of continuing violations. *Id.* Mack's transfers were infrequent, isolated incidents that did not indicate the possibility of permanent consequences. She remained employed by Wortham for almost three years following her third transfer, which was longer than she had worked in either of her prior departments. She has failed to demonstrate a connection between the incidents involving Hurd and Cox and her termination. Mack has alleged no facts showing that her transfers and denial of transfer were related acts, or that any of these acts was related to her termination, which is a prerequisite for the application of the continuing violations doctrine. The decisions to transfer her first from the Commercial Accounts Department and then from the Risk Management Department were made by different individuals in separate

departments. Furthermore, assuming *arguendo* these claims were not time-barred, legitimate, nondiscriminatory reasons were given for both transfers: Johnston determined Mack was not a good match for the position and McCann cited Mack's lack of necessary computer skills as the primary reason for her termination. Both Johnston and McCann assisted Mack in obtaining positions in other departments within the company. Mack has thus failed to demonstrate a factual dispute as to whether Wortham's actions rose to the level of continuing violations.[2]

Because Mack's continuing violations theory fails, we now consider whether she has established a hostile work environment claim. In order for a hostile work environment claim to survive, the unlawful employment practice must have occurred "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (holding that managers' racial jokes, racially derogatory acts, and racial epithets created a hostile work environment and were part of the same actionable hostile environment claim). We have held that, unlike demotion, "the cumulative effect of the petty annoyances of daily harassment . . . constitute[s] a part of the same pattern of behavior that amounts to a continuous violation by rendering [the employee's] workplace a hostile environment." *Huckabay*, 142 F.3d at 240. To determine whether an actionable hostile environment claim exists, we examine all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

---

[2] We also note that, had Mack brought a Title VII claim within 300 days of being transferred or being denied transfer she would not have been successful for lack of an adverse employment action, which requires, at a minimum, a demotion, a transfer to a lower or less desirable position, or a denial of a promotion. Both transfers were lateral and neither involved a decrease in responsibility or salary and she was never denied a promotion. *See, e.g. Alvarado v. Tex. Rangers*, 492 F.3d 605, 613-14 (5th Cir. 2007).

work performance. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116.

The actions of which Mack complains were infrequent, isolated incidents for which reasonable explanations were given. She was not threatened or humiliated, and neither the transfers nor the disagreements she had with her superiors can be construed as interfering with her performance, which was already less than satisfactory from the beginning of her time in the Marine Department. Wortham's decisions to transfer Mack do not amount to the same kind of acts described in *Huckabay*, where the continuous racial harassment only manifested itself over time through relatively minor but frequent incidents and thus warranted the label of hostile work environment. Mack was not exposed to a hostile work environment, and, as discussed above, the alleged discriminatory acts were neither adverse nor related.

Because Mack fails to establish an exception to the 300-day limitation, we only consider alleged discriminatory acts that occurred after May 28, 2008. We therefore affirm the district court's decision that her claim for relief based on her transfers from the Commercial Accounts and Risk Management departments, as well as Wortham's refusal to transfer her from the Marine Department in 2007, is barred by her failure to file the EEOC charge within 300 days of these incidents.

**D.     Claims Barred by EEOC Ninety-Day Limitation for Filing Suit**

The right to sue is lost if a claim is not filed within ninety days of the plaintiff's receipt of the right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1). The EEOC mailed the dismissal and notice of rights to Mack on August 30, 2010. Mack filed her complaint on December 2, 2010, ninety-four days after the mailing date. She asserts that she received the EEOC letter on September 3, 2010, and that her suit was timely filed. However, Wortham contends that, since Mack testified in deposition that she had "no reason to believe" she did not receive the letter within three days of its mailing, it is presumed that she received it by September

2, 2010, and she filed her claim ninety-one days after its receipt.

When there is a dispute as to the date the right-to-sue letter is received, this Court has presumed it was received between three and seven days after the letter was mailed. *Stokes v. Dolgencorp, Inc.*, 367 F. App'x 545, 547–48 (5th Cir. 2010) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)). Mack's original complaint states that she received the right-to-sue letter on September 3, 2010. However, when asked "[s]o you have no reason to believe that [the right-to-sue letter] did not arrive in your mailbox within three days of August the 30th, 2010, correct?" in her deposition, she responded that she had no reason to believe that she did not receive the letter by September 2, 2010. Despite this discrepancy, we take all facts in the light most favorable to the non-movant at the summary judgment stage and presume that she received the letter some time between September 2, 2010 and September 6, 2010. Because she received the letter after September 2, 2010, her complaint was timely filed.

**E.    Claims Barred by EEOC Charge**

Wortham also alleges that Mack's claims of sex and culture discrimination are barred by 42 U.S.C. § 2000e-5(f)(1). Under that statute, the scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Young v. City of Hous.*, 906 F.2d 177, 179 (5th Cir. 1990). Mack's EEOC charge alleged age- and race-based discrimination, but her complaint alleged age, race, sex, and culture discrimination.    As explained below, her age- and race-based discrimination claims are barred.

An employee who wishes to bring a discrimination claim against her employer must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain

voluntary compliance." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970). Because the scope of an EEOC complaint is to be construed liberally, we review a Title VII claim broadly and do not limit our review to the scope of the administrative charge itself, but consider the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789 (quoting *Sanchez*, 431 F.2d at 466).

Because this Court has held that a failure to allege sex discrimination in an EEOC charge properly results in dismissal of a subsequent complaint for lack of exhaustion, the omission of a culture discrimination claim from an EEOC charge is similarly a failure to exhaust. The district court was correct in its determination that investigation into Mack's race- and age-based discrimination charges would not reasonably lead the EEOC to investigate sex or culture discrimination charges. *See Kretchmer v. Eveden, Inc.*, 374 F. App'x 493, 495 (5th Cir. 2010) (unpublished) (per curiam); *see also Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). We therefore affirm its decision that Mack's sex and culture discrimination claims are barred because she has failed to meet the exhaustion requirement.

## F.    Failure to Establish Prima Facie Case of Discrimination

Because Mack's claims arising out of her transfers from the Commercial Accounts Department and the Risk Management Department, as well as her claims of discriminatory acts that occurred in the Marine Department before May 28, 2008, are barred by the 300-day limitation, we will focus only on her claims arising out of her termination from the Marine Department.

### 1. Title VII Claim

Title VII makes it unlawful to discharge, refuse to hire, or discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex,

or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to establish a prima facie case of discrimination, the employee must produce evidence "that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (internal quotations omitted). If the plaintiff establishes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating employment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, the defendant need not persuade the court that it was actually motivated by the proffered reasons—it is sufficient that the defendant's evidence raises a genuine issue of material fact as to whether it discriminated against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). If the employer meets this burden, the plaintiff must demonstrate that the given reason was mere pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *Id.* at 256.

Assuming *arguendo* Mack can show the first three prongs of the prima facie case, she has failed to show that either she was replaced by someone outside the protected class or that others similarly situated were treated more favorably. She alleges in her EEOC charge that Dreana Lemon, a Hispanic female with less seniority, was allowed to remain in her position when Mack was terminated. However, Lemon was already employed by Wortham and merely returned from leave to her prior position—she did not replace Mack. Mack also stated in her deposition that she did not know who, if anyone, had replaced her. In fact, she was not replaced at all. Flournoy's affidavit explains the chain of events that led to Mack's termination. In 2008, one of Wortham's largest clients

sold the majority of its properties, reducing the amount of business in the Marine Department. The adoption of an automation system further reduced the workload of the Marine Department. Two employees were out on leave at the time, and Flournoy decided that once both returned, the department would be overstaffed. To determine which employee to lay off, he asked each member of the technical and professional staff in the Marine Department to rank the department employees. Each ranking listed Mack as the lowest-performing employee. Mack's position was eliminated and she was not replaced.

Alternatively, to establish disparate treatment a plaintiff may show that the employer gave preferential treatment to another employee under "nearly identical" circumstances, which requires a showing that an employee outside of the protected class held the same job, title, and duties, was under the same supervisor, committed the same infractions, and was not discharged. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Okoye*, 245 F.3d at 514 (holding that because other employees' violations differed from and did not rise to the level of those committed by plaintiff, plaintiff failed to establish disparate treatment).

Mack has not alleged that any other Wortham employee was similarly situated, and therefore cannot show that a similarly-situated employee was treated more favorably. Mack admitted in her deposition that she was tardy more frequently than anyone else in the Marine Department. She has also failed to present evidence that other employees were similarly insubordinate, much less that other insubordinate employees were not discharged. She has offered only her subjective belief that she would have been treated differently had she not been African American. However, a generalized statement of less-favorable treatment is insufficient to establish a factual dispute as to disparate treatment. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1186 (5th Cir. 1997) (holding that plaintiff's contention that he was "watched" more closely than white

employees did not establish race-based discrimination in the absence of evidence that similarly situated white employees were also regularly tardy but not watched).    Consequently, she cannot raise a genuine dispute of fact as to whether another similarly situated employee who committed the same infractions was treated more favorably.

Furthermore, assuming *arguendo* that Mack had successfully pleaded a prima facie case of discrimination, summary judgment would still have been proper based on Wortham's legitimate, nondiscriminatory reasons for its actions. Mack's consistent tardiness is well-documented and undisputed. The incidents of insubordination, even taken in the light most favorable to Mack, demonstrate conflicts between Mack and her supervisors. The record also demonstrates her failure to follow established procedures and her supervisors' instructions. Wortham's Vice-Chairman decided to lay off an employee in the Marine Department due to changed circumstances. He terminated the weakest employee in the department.

Mack has not rebutted any of these facts and thus has failed to demonstrate a genuine issue of fact as to whether Wortham's proffered explanation was pretextual. She has shown neither that her termination was more likely motivated by a discriminatory reason nor that Wortham's proffered explanation is implausible. She does not dispute that she could have been disciplined or even terminated for her tardiness alone and makes no showing that the reasons given for her termination were invalid.

### 2. Retaliation Claim

Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this title . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C.

§ 2000e-3(a).  A plaintiff bringing a retaliation claim has the burden of establishing that (1) she participated in statutorily protected activity; (2) she received an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  *Mayberry*, 55 F.3d at 1092.

Although Mack does not make this clear in her complaint, ostensibly the "statutorily protected activity" in which she participated and which she contends led to her termination consisted of her complaints against Hurd, Cox, and Carlson.  Because she had already been terminated, she cannot claim that she was retaliated against for filing an EEOC discrimination charge against her supervisors.  Even if we assume that the adverse employment action to which she refers was her termination from Wortham, she makes no reference in her complaint to any causal connection between her alleged informal complaints to other Wortham employees and the ultimate adverse employment action, and thus fails to make a prima facie showing of retaliation.  Furthermore, as stated above, Wortham has demonstrated several legitimate, nondiscriminatory reasons for her termination from the Marine Department, which Mack has failed to rebut.

### 3. ADEA Claim

In order to establish a prima facie case under the ADEA, the plaintiff must establish: (1) that she was discharged; (2) that she was qualified for the position; (3) that she was within a protected class at the time of the discharge; and (4) that she was replaced by someone outside the protected class, replaced by someone younger, or that her discharge was otherwise because of her age.  *Young v. City of Hous.*, 906 F.2d 177, 182 (5th Cir. 1990).  Once the plaintiff establishes this, the burden shifts to the defendant to rebut the presumption of discrimination.  *Id.*  Evidence relevant to a showing of pretext may include that employees outside of the protected class were engaged in the same type and level

of infraction as the plaintiff. *See McDonnell Douglas Corp.*, 411 U.S. at 804.

The parties do not dispute that Mack was discharged from her position in the Marine Department. There is a disagreement as to whether Mack was qualified for her position, but because Wortham does not explain the minimum qualifications for her position, we assume without deciding that Mack was qualified. It is also undisputed that Mack, who was fifty-five years of age at the time of her termination, was within a protected class. *See* 29 U.S.C. § 631(a).

As explained above, Mack cannot satisfy the fourth prong of a prima facie case because she has not shown that she was replaced at all, let alone by someone under fifty-five years of age. Furthermore, she has alleged no facts showing that her discharge was because of her age. This Court has held that "a plaintiff's subjective belief that his discharge was based on age is simply insufficient to establish an ADEA claim." *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993). Mack has presented no support for her age discrimination claim other than her subjective belief that she would have been treated differently if she had been younger. Mack testified that she never heard any Wortham employee or supervisor make negative remarks based on age. Her allegation that she was replaced by Lemon, a younger Hispanic female, is false—Lemon was already an employee of Wortham and simply returned from maternity leave.

Because Mack cannot show that she was replaced, she has failed to raise a factual dispute as to whether she was replaced by an individual outside of the protected class, and she has not met her burden of establishing a prima facie case of age discrimination. As described above, even if she had met this burden, because Wortham articulated legitimate, nondiscriminatory reasons for her termination which Mack has not rebutted as pretextual, summary judgment would still have been proper.

## G.    Breach of Contract

Mack argues that on December 2, 2005, she and Wortham entered into a written contract which stipulated that Mack's supervisor would give her annual reviews.      She complains that because she only received one review during more than three years of employment, Wortham breached this contract.   The "contract" is in the form of an e-mail sent to Hahn by J.M. Jones (and copied to Mack) which states:

> This e-mail will confirm our telephone conversation yesterday regarding an "annual" performance review for Eula Mack.   You indicated that you had already marked Eula's personnel file to review her job performance annually.

Because breach of contract is a state law claim, Texas law applies.   To bring a successful breach of contract claim in Texas, a plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.   *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009).   A valid contract requires (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, (5) execution and delivery of the contract with the intent that it be mutual and binding, and (6) consideration.   *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App—Houston [14th Dist.] 2000, no pet.).   The essential terms must be defined "with sufficient precision to enable the court to determine the obligations of the parties."   *New Process Steel, L.P. v. Sharp Freight Sys.*, No. 01-04-00764-CV, 2006 WL 947764, at *3 (Tex. App.— Houston [1st Dist.] Apr. 13, 2006, no pet.). Furthermore, a meeting of the minds refers to a mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract.   *See Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).   This e-mail lacks at least two requirements for a valid contract and therefore does not qualify as such. Even if the e-mail were an offer to Mack to perform an annual performance

review, there is no evidence that she accepted the offer. Additionally, even if we did find a valid offer and acceptance, there is no consideration—there is no evidence of a bargained-for exchange of promises, which is the basis of a valid contract. *See Tex. Gas Util. Co. v. Barrett,* 460 S.W.2d 409, 412 (Tex. 1970). Mack's agreement to work for Wortham was not induced by the promise of annual performance reviews, nor was Hahn's statement that Mack was to receive annual performance reviews induced by consideration from Mack. In the absence of a mutuality of obligation, there can be no enforceable contract. *Id.*

## IV. CONCLUSION

Because Mack has failed to raise genuine issues of material fact that her termination was the result of race- or age-based discrimination or that Wortham breached its contract with her, we AFFIRM the district court's grant of summary judgment to Wortham.