United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 24, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Summary Calendar
No. 04-10058
_____

FIROOZEH H. BUTLER,

Plaintiff - Appellant,

versus

MBNA TECHNOLOGY, INC., formerly
known as MBNA Hallmark Information
Services, Inc.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
USDC No. 3:02-CV-1715-H
_____

Before JOLLY, HIGGINBOTHAM, and PICKERING, Circuit Judges.

PER CURIAM:[*]

Firoozeh Butler brought this suit against MBNA Technology, Inc., alleging retaliatory discrimination and a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981. The district court dismissed Butler's claims under § 1981 for failure to state a claim. She has not appealed that decision. The case went to trial

_____

[*] Pursuant to 5TH CIR. R. 47.5., the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and, after the close of plaintiff's case, the district court granted MBNA's motion for judgment as a matter of law on Butler's Title VII hostile work environment claim. The court held that Butler could not rely on a "continuing violation" theory to extend the three hundred day statute of limitations for hostile work environment claims, and that the single incident within the statute of limitations period was insufficient as a matter of law to establish a hostile work environment. As to the retaliatory discrimination claim, the jury returned a verdict against Butler, concluding that she had not suffered an "adverse employment decision". Butler appeals the court's ruling and the jury's verdict.

I

Butler is of Iranian descent and is a practicing Muslim. She has been employed by MBNA since 1993, and has worked in several different departments under various supervisors. The record is unclear as to precisely how and when the alleged discriminatory treatment began. It appears that the first incident occurred in 1995 or 1996, when Don Little, a supervisor, allegedly remarked to Butler that Iranians are "crazy" and "smell bad". In March 1997, her then-supervisor, Mike Sullivan, allegedly commented to her that Iranians are "crazy" and "put dirty laundry on their heads". Butler testified that after she reported this comment to a superior, Sullivan "began yelling and cursing at" her in a vacant office and blocked the door when she tried to leave. In April

2

2000, Mary Thompson, Butler's project leader, allegedly told Butler that the two could not communicate due to cultural differences and that "American people don't forget that Iranians take hostages." In May 2000, Kim Murphy, an employee in MBNA's Human Resources Department, allegedly referred to Middle Easterners as "camel jockeys" or "CJ". Finally, Butler claims to have been subjected to harassment in October 2001, when the aforementioned Don Little posted a picture of Taliban leader Mullah Mohammed Omar in his cubicle. The picture featured a quotation of Omar using the term "jihad", which Butler says she found offensive.

Butler further claims to have been subjected to retaliatory discrimination as a result of her complaints to management about the above events. In March 2001, Butler, who had been a "Tier 3" software engineer, was reassigned to the lower "Tier 2".[1] She alleges that this change was made because she "began to complain on a regular basis to her supervisors and the HR department."

II

We review the district court's order granting judgment as a matter of law de novo. Stevenson v. E.I. DuPont de Nemours & Co., 327 F.3d 400, 404-05 (5th Cir. 2003). Judgment as a matter of law

---

[1] The parties disagree as to whether this change in Butler's status constituted a "reclassification" or a "demotion". The distinction is essentially semantic and does not affect our analysis. This court's interpretation of the "adverse employment decision" element of a Title VII retaliation claim is well settled and our evaluation hinges on the substance of the decision, rather than the label applied to it. See Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004).

3

is appropriate only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the non-movant. FED. R. CIV. P. 50(a).

We review the jury's verdict for MBNA only to determine whether it is "supported by substantial evidence." Snyder v. Trepagnier, 142 F.3d 791, 795 (5th Cir. 1998). "Substantial evidence" is evidence "of such weight and quality that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions." Id. (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), overruled on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997)).

## III

We look first to Butler's hostile work environment claim. We begin by determining whether the district court erred in rejecting Butler's "continuing violation" theory with respect to her hostile work environment claim. We must then decide whether the district court erred in granting MBNA's motion for judgment as a matter of law on the claim.

## A

In order to rely on a continuing violation theory, a plaintiff must show that the harassment within the limitations period and the harassment outside the limitations period constituted "a series of related acts" and that "an organized scheme led to and included the present violation." See Pegram v. Honeywell, Inc., 361 F.3d 272,

4

279 (5th Cir. 2004); <u>Felton v. Polles</u>, 315 F.3d 470, 485 (5th Cir. 2002) (citing <u>Celestine v. Petroleos de Venezuela SA</u>, 266 F.3d 343, 352 (5th Cir. 2001)). This court has looked to at least three factors in determining whether acts are sufficiently related to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are in the nature of recurring events, or are more in the nature of isolated events; and (3) whether the act or acts have the degree of permanence that should alert an employee to assert his rights. <u>Huckabay v. Moore</u>, 142 F.3d 233, 239 (5th Cir. 1998). When we examine the facts here in the light of these legal considerations, we find that the district court did not err.

First, we will assume, notwithstanding a difference in character, that the alleged events are sufficiently similar in type to the event within the statutory period to permit a showing that they are part of a continuing violation. Butler filed her initial complaint with the EEOC on November 5, 2001. As such, the only events that the district court could consider in ruling on her hostile work environment claim were those that occurred within the three hundred days preceding November 5 -- i.e., events that took place on or after January 10, 2001. <u>See</u> <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 105-05 (2002); <u>Huckabay</u>, 142 F.3d at 238 (citing 42 U.S.C. § 2000e-5(e)(1)). Butler alleges only one

5

act of harassment within that period -- the posted picture of Taliban leader Mullah Mohammed Omar in October 2001.[2]  Butler contends that the picture offended her because it included a quotation in which Omar used the term "jihad."  Butler testified that she found the association of the term "jihad" with the war in Afghanistan offensive because, "Jihad has nothing to do with war. Jihad is a religious thing that people pray and sacrifice their lives and meditate . . . ."

We believe that Butler's claims concerning the Mullah Omar picture are best described as allegations of religious discrimination.  Butler admits that she is not of Afghani national origin and that she is not in any way affiliated with the Taliban. Further, her arguments relating to the use of the term "jihad" make it clear that the source of her displeasure was the misuse of an important tenet of the Muslim religion.  By contrast, none of the events that occurred prior to the statute of limitations period were religious in nature.  Instead, each of the prior incidents involved discrimination based specifically on Butler's Iranian

---

[2]  The posted picture of Mullah Omar included the following text:  "A hard lesson that some have yet to learn:  October 2001-Taliban supreme leader Mullah Mohammed Omar:  'The situation where we are now, there are two things:  either death or victory.  To those who are fighting and bombarding us, they should understand the Afghan man is a fighter willing to die for jihad.'  June 1944-General George S. Patton:  'I want you to remember that no bastard ever won a war by dying for his country. He won it by making the other poor dumb bastard die for his country.'"

national origin or, in one case, on her being of Middle Eastern descent.

Nevertheless, we will assume that Islam is the dominant religion of Iran and the Middle East in general, and that the religion is often closely associated with the region in American popular perception. Thus, we will assume that, on these particular facts, the alleged harassment based on nationality and the alleged harassment based on religion could be shown to be sufficiently similar to be connected in an "organized scheme". As we note below, however, Butler fails to make such a showing.

Second, Butler has not shown that the alleged acts occurred with sufficient frequency to support a continuing violation theory. She alleges five incidents of harassment over the course of approximately five years. Further, only one event outside the limitations period –– the alleged comments by Don Little in 1995 or 1996 –– involved harassment by the same person as the Mullah Omar incident in October 2001. More than five years passed between the two incidents. This court has held that a "three year break" will defeat any attempt to establish a continuing violation. Felton, 315 F.3d at 486. As such, we conclude that Butler's allegations are more in the nature of isolated work incidents than a continuing violation.

Third, as to the question of the permanence of the harassment, we find that the four alleged incidents outside the statute of

limitations period were significantly more likely to put Butler on notice that the harassment was an ongoing thing and that her rights had been violated, than the one incident within the period. The four alleged incidents were all directed specifically toward Butler and all involved derogatory comments about her Iranian national origin or Middle Eastern descent. This court has previously said that "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she cannot reach back and base her suit on conduct that occurred outside the statute of limitations." Celestine, 266 F.3d at 344 (quoting Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999)). The several directly offensive comments made outside the statute of limitations period would seem far more likely to alert an employee to the existence of a hostile work environment than the posting of an indirectly offensive quote within a co-worker's cubicle. As a result, we hold that Butler had sufficient notice of a basis for violation of her rights, long before the single incident within the statute of limitations.

As a matter of further analysis, we should observe that Butler fails to offer any coherent explanation linking the separate alleged incidents into an "organized scheme". Her only argument that even remotely touches on this point is that all four of the individuals who allegedly harassed her had access to her "working

8

file"; therefore, they should have been aware of her prior complaints of discriminatory conduct. This suggests that Butler is alleging a systemic failure of MBNA managers to keep up to date on the contents of the working files of their subordinates. Butler's theory, however, is purely speculative; she offers no evidentiary support for her contention that there was any such failure or that the alleged harassment against her had a causal connection with such failure. As such, she fails to "show that there has been a pattern or policy of discrimination" connecting the alleged acts into a "continuing violation". Celestine, 266 F.3d at 352.

B

We now turn to the specific question of whether the district court erred in granting MBNA's motion for judgment as a matter of law. To sustain a hostile work environment claim under Title VII, a plaintiff must show, inter alia, that the alleged harassment affected a "term, condition, or privilege of employment." Celestine, 266 F.3d at 353. For harassment to affect a "term, condition, or privilege of employment," it must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." Id.

Without a continuing violation, Butler's hostile work environment claim consists of only one alleged incident -- the Mullah Omar picture and quote posted by Don Little. We think it almost impossible that a single alleged incident of harassment

9

could be considered "pervasive." Compare, e.g., Shepherd v. Comptroller of Public Accounts, 168 F.3d 871, 875 (5th Cir. 1999) (finding that four sexual comments and several instances of touching over a two-year period were not sufficient to create a material issue of fact as to severe or pervasive harassment); Celestine, 266 F.3d at 354 (finding that the plaintiff could not establish severe or pervasive harassment based on eight incidents of alleged racial harassment during a two-year period).

Likewise, we conclude that the conduct alleged here was not particularly "severe." The essence of the alleged harassment was Butler's disapproval of a quotation that she felt took a tenet of her religion out of context. There is no evidence in the record that Little intended the posting to serve as a commentary on the Muslim religion; construed in the most favorable light for the plaintiff, it might be seen as an expression of Little's dislike of the Taliban, with which, however, Butler is not affiliated. Further, when Butler complained that the Mullah Omar picture offended her, MBNA's personnel department promptly investigated and had the picture removed. For these reasons, we find that Butler did not show that the alleged harassment was sufficiently severe or pervasive to sustain a hostile work environment claim under Title VII. Thus, the district court did not err in granting MBNA's motion for judgment as a matter of law on the claim.

IV

10

We turn now to the significantly simpler matter of reviewing the jury verdict that rejected Butler's Title VII discrimination claim. The jury, pursuant to a specific interrogatory, found that Butler had not suffered an "adverse employment decision". As noted before, we review the jury's verdict for MBNA only to determine whether it is supported by substantial evidence. See Snyder, 142 F.3d at 795.

To assert a prima facie claim of retaliatory discrimination, Butler must show (1) that she engaged in protected activity under Title VII; (2) that she suffered an adverse employment decision; and (3) that there is a causal link between the protected activity and the employment decision. See Burger v. Central Apartment Management, Inc., 168 F.3d 875, 878 (5th Cir. 1999); Anderson v. Douglas & Lomason Co., Inc., 26 F.3d 1277, 1300 (5th Cir. 1994). The parties do not dispute that Butler engaged in activities protected under Title VII. Thus, the only issue before us is the jury's finding that Butler's reassignment was not an "adverse employment decision."

This court has determined that an employment action that "does not affect job duties, compensation or benefits" is not an adverse employment action. Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) (quoting Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 769 (5th Cir. 2001)). It is undisputed that Butler presented no evidence at trial that her compensation,

11

responsibilities, or benefits were reduced as a result of her complaints to management. Further, the jury heard testimony from Butler and other MBNA employees that, in fact, her compensation and responsibilities remained unchanged after her complaints and reassignment as a "Tier 2" software engineer. As a result, it is clear that the jury's verdict was supported by substantial evidence.

Having held (1) that the district court properly granted MBNA's motion for judgment as a matter of law and (2) that the jury's verdict for MBNA was supported by substantial evidence, we conclude that the judgment of the district court is in all respects

AFFIRMED.

12