# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30625

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2017

Lyle W. Cayce
Clerk

PANAGIOTA HEATH, also known as Penney Heath,

      Plaintiff - Appellant

v.

BOARD OF SUPERVISORS FOR THE SOUTHERN UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE; MOSTAFA ELAASAR,
in his official and personal capacities,

      Defendants - Appellees

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Panagiota Heath is a math professor at Southern University's New
Orleans campus. When Mostafa Elaasar became her supervisor in 2003, she
alleges he began a campaign of harassment that continued through the filing
of this lawsuit a decade later. She seeks to hold the school liable for the
harassment under Title VII and Elaasar individually responsible under
section 1983.

Although Heath's allegations cover a substantial period of time, the trial
court believed it could only consider the conduct occurring within 300 days of
Heath's filing of a complaint with the EEOC for the Title VII claims and within

No. 16-30625

one year of filing the lawsuit for the section 1983 claims.  Looking only at the conduct occurring during that narrow timeframe, the magistrate judge granted summary judgment in favor of the Defendants.  The principal question in this appeal is whether the continuing violation doctrine required consideration of a lengthier period of time in evaluating the merit of Heath's claims.  Answering that question requires us to assess the impact of the Supreme Court's decision in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), on earlier continuing violation decisions from this court.

**I.**

Taking the facts in the light most favorable to Heath as we must at the summary judgment stage, once Elaasar became chairman of the College of Natural Sciences in 2003, he began to interfere with Heath's classes.  Among other things, this took the form of rewriting exams and coercing a student to make a complaint against her.  Elaasar denied Heath's request for a sabbatical in 2008, telling her he did not believe she was capable of writing a book.  Sometime in 2009, Elaasar told Heath to "stop misbehaving."  Another professor reported that Elaasar had said that Heath was excluded from meetings because she "talk[ed] too much for a woman."

Heath filed a lawsuit in state court in 2009 asserting sex discrimination and other claims but the suit was dismissed when Heath stopped pursuing it.  Sometime after Heath filed the state lawsuit, another female faculty member emailed Heath regarding a "new culture" in the math department under Elaasar, with people, "mostly males," who have "been known to be dominating to women."  The email stated that, "[i]f you are a strong liberal woman," in sciences and mathematics, "then your job is going to be tough."  Another university employee wrote a letter to the administration expressing concern that Heath was being "railroaded" as the result of "cultural and gender biases."

2

Heath complained to Southern about Elaasar's conduct, but the university did not respond.

Heath's physician recommended a sabbatical due to significant job related stresses and associated health problems. Elaasar and a higher-ranking university official approved Heath's request for leave for the 2010-2011 academic year.

According to Heath, when she returned in fall 2011, so did Elaasar's harassment. Elaasar refused to allow her to participate in any committees, would not allow her to teach online courses or in the tutoring lab, would not permit her to write grants for the department, would not allow her to teach advanced classes, and isolated her from departmental business by meeting privately with other instructors. He refused to acknowledge her when she asked to speak in departmental meetings, and if she did speak, he cut her off. Students corroborate Heath's contentions, describing Elaasar's treatment of her in the classroom as "unprofessional, unwelcoming, and even aggressive;" he "belittled or otherwise spoke down when speaking to Dr. Heath, and also when speaking about her to students when she was not present." He "would usually attempt to physically intimidate her as well as to disrespect her." His "barbaric" treatment displayed "open hatred and contempt" for Heath. As a result, more than 200 students signed a petition asking the university to change Heath's working environment to be "non-hostile" and "non-harassing." Heath made multiple complaints about Elaasar's behavior to Southern in fall 2012. There is no indication that Southern responded.

In early 2013, Heath filed a charge with the EEOC alleging a hostile work environment based on sex as well as retaliation for her state court lawsuit. The charge did not mention discrimination on the basis of race, religion, or national origin, though this lawsuit alleges that the harassment is also attributable to those factors. Heath is of Greek descent and a practicing

member of the Greek Orthodox Church. In support of her claims that the harassment was also based on her national origin and religion, she recounts, among other things, Elaasar telling her that he was a "radical Muslim" and that one day Muslims would "rise and kill all the Christians."

After the EEOC issued a right-to-sue letter, Heath filed this case making those Title VII allegations of a hostile work environment predicated on sex, race, religion, and national origin. The complaint relies on the same allegations to bring a section 1983 harassment claim against Elaasar. Finally, it asserts that the university retaliated against Heath in response to her state lawsuit.

A magistrate judge, hearing the case by consent, granted summary judgment on all claims in favor of Defendants. She concluded that: (1) Heath did not exhaust her Title VII claims based on race, religion, or national origin; (2) the court could not consider most of the harassing conduct Heath relied on because it occurred outside the statute of limitations (300 days before the filing of her EEOC charge for the Title VII claim,[1] and one year before the filing of her lawsuit for the 1983 claim); (3) considering only Defendants' conduct within that window of time, Heath had not presented adequate evidence to support a hostile work environment claim; and (4) Heath had not shown that any adverse employment actions during the relevant time period were in retaliation for her state court suit.

On appeal, Heath does not challenge the dismissal of her Title VII claims based on race, religion, or national origin. That leaves for our consideration

---

[1] In states like Louisiana that have "an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice;" in states without such an entity, an employee must file within 180 days. *Morgan,* 536 U.S. at 109 (applying 42 U.S.C. § 2000e-5(e)(1)).

No. 16-30625

whether the district court erred by dismissing Heath's Title VII claims for sex-based hostile work environment and retaliation, and her hostile work environment claim under section 1983 that covers various forms of discrimination.

## II.

### A.

The EEOC filed an amicus brief because it believes the magistrate judge neglected Supreme Court guidance on application of the continuing violation doctrine.  That doctrine provides that when a plaintiff alleges a hostile work environment claim, "as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, 'the entire time period of the hostile environment may be considered by a court for the purpose of determining liability.'"  *Hartz v. Adm'rs. of Tulane Educ. Fund*, 275 F. App'x 281, 289 (5th Cir. 2008) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

In refusing to treat Heath's hostile work environment claims as continuing violations, the magistrate judge relied on the following three factors we considered prior to the Supreme Court's decision in *Morgan*:  (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the alleged acts are recurring or more in the nature of an isolated work assignment or incident; and (3) whether the act has the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights.  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 352 (5th Cir. 2001) (*Celestine I*).  Following pre-*Morgan* case law that deemed the third factor to be "perhaps of most importance," *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) (quoting *Berry v. Bd. of Sup'rs of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)), the magistrate judge held there was no continuing violation based entirely on its

No. 16-30625

finding that "the resumption of [Elaasar's] behavior after [Heath's] return from her sabbatical should have alerted Heath to act to protect her rights" in 2011, well before she filed her EEOC complaint in 2013.

The magistrate judge did not consider *Morgan*. That decision distinguishes discrete acts that form the basis of traditional discrimination claims from continuing conduct that forms the basis of hostile work environment claims. Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are. Hostile environment claims are "continuing" because they involve repeated conduct, so the "unlawful employment practice" cannot be said to occur on any particular day. *Morgan*, 536 U.S. at 115–17. As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*[2] As one circuit has helpfully described *Morgan*'s reasoning, a plaintiff's hostile environment claim "is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant,"

---

[2] The Court explained:

The following scenarios illustrate our point: (1) Acts on days 1–400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1–100 and on day 401, but there are no acts between days 101–400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one "unlawful employment practice" and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, if an act on day 401 had no relation to the acts between days 1–100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.

*Morgan, 536* U.S. at 118.

so "the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement." *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006).

Most notably, *Morgan* rejected the view of circuits like ours that had held "the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct." *Morgan*, 536 U.S. at 117–18; *see also id.* at 107 (noting that the Seventh and Fifth Circuits had adopted similar tests); and 117 n. 11 (rejecting the Seventh Circuit's test). That now discarded view, which was reflected in *Celestine I*, was the basis for not treating Heath's harassment claim as a continuing violation.[3]

We have not expressly recognized that *Morgan* overruled the portion of *Celestine I* on which the magistrate judge relied. *But see Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 407 n.9 (5th Cir. 2016) (noting *Morgan* abrogated *Celestine I* in part). Indeed, we have noted that most of *Celestine I* "remains good law." *Celestine v. Petroleos De Venezuela SA*, 108 F. App'x 180, 185 (5th Cir. 2004) (*Celestine II*). *Celestine II*, however, turns on the plaintiff's failure to identify specific acts of harassment, and does not quote or apply *Celestine I*'s third factor that focuses on when a plaintiff was on notice to file suit.

---

[3] The magistrate judge was not alone among trial courts in continuing to apply this factor from *Celestine I*. *See, e.g.*, *Culotta v. Sodexo Remote Sites P'ship*, 864 F. Supp. 2d 466, 471–72 (E.D. La. 2012); *Safford v. St. Tammany Parish Fire Prot. Dist. No. 1*, 2004 WL 32921, at *5–*6 (E.D. La. Jan. 5, 2004). Because of that confusion, we address the question at some length.

No. 16-30625

Nor have our published post-*Morgan* decisions.[4] The test they apply for assessing the viability of a continuing violation theory does not include the factor considering whether the plaintiff should have filed her complaint earlier. *See, e.g.*, *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (noting that *Morgan* "clarified the limits of the continuing violations doctrine," and not stating or applying a notice factor). For example, *Stewart v. Mississippi Transport Commission*, 586 F.3d 321 (5th Cir. 2009), identifies three limits on the continuing violation doctrine: (1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose without negating the particular purpose of the filing requirement." *Id.* at 328 (internal quotation marks and citation omitted). There is no mention of whether an act outside the 300 day period "ha[s] the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights." *Celestine I*, 266 F.3d at 352. Other continuing

---

[4] A few post-*Morgan* unpublished cases apply *Celestine I*'s third factor. One case held that the continuing violation doctrine did not apply because "a reasonably prudent person similarly situated" would have been alerted to act to protect his or her rights earlier. *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 Fed. App'x 874, 877 (5th Cir. 2010) (quoting *Glass v. Petro–Tex Chem. Corp.,* 757 F.2d 1554, 1560–61 (5th Cir. 1985)). Another, applying *Celestine I*, found the doctrine did not apply because prior comments were "likely to alert an employee to the existence of a hostile work environment." *Butler v. MBNA Tech., Inc.*, 111 F. App'x 230, 234 (5th Cir. 2004); *see also Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 356 (5th Cir. 2013) (summarily noting that the court has considered "permanence" in applying the continuing violation doctrine). These nonbinding decisions do not consider whether *Morgan* overruled the earlier decisions on which they relied.

Defendants point to another unpublished case that, in a footnote, cites pre-*Morgan* cases, including *Celestine I*, concerning plaintiff's notice. *Watkins v. Recreation & Park Comm'n for City of Baton Rouge*, 594 Fed. App'x 838, 841 n.3 (5th Cir. 2014). But that case does not hold that the continuing violation doctrine does not apply if acts have alerted a plaintiff of the need to protect his or her rights; *all* of the incidents that supported the plaintiff's hostile work environment claim had occurred before the 300 day period began. *Id.*

violation decisions have applied *Stewart*. *See Ryals v. Am. Airlines, Inc.*, 553 F. App'x 402, 405 (5th Cir. 2014); *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012); *see also E.E.O.C. v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 823 (N.D. Tex. 2012) (recognizing that *Stewart* makes clear that "the continuing violation doctrine with respect to hostile work environment claims is more properly addressed through a post-*Morgan* lens" than through *Celestine I*).

We are not alone in recognizing that *Morgan* rejected the "on notice" factor *Celestine I* had applied. Before *Morgan*, the Tenth Circuit had also applied a three-part test for the continuing violation doctrine that included "whether the nature of the violations should trigger an employee's awareness of the need to assert her rights." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003). Acknowledging that *Morgan* "expressly held that the date on which a plaintiff becomes aware that he or she has an actionable Title VII claim is of no regard in the context of determining the timeliness of a hostile work environment claim," the court held that "*Morgan* implicitly overruled . . . Tenth Circuit cases" that had held to the contrary. *Id.* at 1185; *see also Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1139–40 (10th Cir. 2003).

Like the Tenth Circuit, we therefore expressly recognize what our-post *Morgan* test for the continuing violation doctrine has long implicitly acknowledged: *Morgan* overruled our prior cases to the extent they held that the continuing violation doctrine does not apply when an employee was or should have been aware earlier of a duty to assert her rights. As the Supreme Court explained, focusing on when harassment occurred, as opposed to when a plaintiff knew of an ongoing violation, is consistent with the text of Title VII: the statute "does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability." *Morgan*, 536 U.S. at 117–18. It also furthers the statute's purpose, as it encourages employees to work with employers and to take advantage of

other mechanisms for obtaining relief from ongoing harassment rather than rushing to bring an EEOC charge and litigation. *See id.* at 119–20; *Faragher v. Boca Raton*, 524 U.S. 775, 806 (1998). The magistrate judge therefore erred in using this factor to prevent Heath from showing a continuing violation that would enable her to support her harassment claim with conduct occurring more than 300 days before she filed her EEOC charge.

### B.

This discussion about the continuing violation doctrine is also relevant to Heath's section 1983 claims. That cause of action offers Heath two advantages over her Title VII claim. First, it allows her to sue Elaasar individually for creating a hostile work environment. *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 165–166 (5th Cir. 2007) (recognizing hostile work environment claim under section 1983). Second, she can prove the claim with harassment based not just on her sex, but also her race, religion, and national origin as section 1983 does not have the exhaustion requirement that eliminated those allegations of discrimination from her Title VII claim. The magistrate judge nonetheless held that the section 1983 claim encompassing these various forms of discrimination failed after concluding that Heath was unable to establish a continuing violation under section 1983 for the same reason she could not do so under Title VII.

The magistrate judge's premise was correct. The continuing violation doctrine applies the same to Title VII hostile work environment claims as it does to such claims brought under section 1983. The statute of limitations for section 1983 is supplied by state law, so Louisiana's one year prescriptive period applies. *Wilson v. Garcia*, 471 U.S. 261, 275 (1985); *Pittman v. Conerly*, 405 F. App'x 916, 918 (5th Cir. 2010). Tolling, which interrupts the statute of limitations after it has begun to run, is also a matter of state law. *See Johnson*

*v. Ry. Express Agency, Inc.*, 421 U.S. 454, 464 (1975). But accrual of a section 1983 claim, which determines when the statute of limitations begins to run, is governed by federal common law. *Montgomery v. Louisiana ex rel. Louisiana Dep't of Pub. Safety & Corr.*, 46 F. App'x 732 (5th Cir. 2002); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). The continuing violation doctrine is a federal common law doctrine governing accrual. *Montgomery*, 46 F. App'x at 732; *see Boswell v. Claiborne Parish Det. Ctr.*, 629 F. App'x 580, 583 (5th Cir. 2015) (finding plaintiff had pleaded a continuing violation in a section 1983 denial of medical attention case). Its availability in hostile work environment claims stems from the nature of that claim, which as a "single unlawful employment practice" accrues within the limitations period so long as some of the continuous conduct occurred during that time. *Morgan*, 536 U.S. at 117–8.

This recognition that Title VII continuing violation law applies with equal force to section 1983 means the same error infected the limitations analysis for Heath's hostile workplace claims brought under both laws. Indeed, *Morgan*'s "distinction between 'continuing violations' and 'discrete acts' is not an artifact of Title VII, but is rather a generic feature of federal employment law." *O'Connor*, 440 F.3d at 128. A number of circuits therefore have applied *Morgan* when determining whether a section 1983 claim alleges a continuing violation. *See id.*; *Sharpe v. Cureton*, 319 F.3d 259, 267–68 (6th Cir. 2003); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003); *Cherosky v. Henderson,* 330 F.3d 1243, 1246 n.3 (9th Cir. 2003); *see also Burkley v. Corr. Healthcare Mgmt. Of Oklahoma, Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005) (assuming without deciding that *Morgan* applies); *Reyes v. Weslaco Indep. Sch. Dist.*, 2007 WL 2538804, at *5 (S.D. Tex. Aug. 30, 2007) (applying *Morgan* to section 1983 hostile work environment claim); *cf. Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (finding that, under

*Morgan*, the continuing violation doctrine "can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs"). The line *Morgan* drew between discrete act claims and ongoing harassment claims means the latter, but not the former, may qualify as continuing violations whether brought under Title VII or section 1983. And in assessing whether the challenged conduct amounts to a continuing violation, *Morgan*'s disclaiming of an "on notice" inquiry should also apply to section 1983 hostile work environment claims.

## C.

We now determine whether Heath's hostile work environment claims involve a continuing violation, using the *Stewart* standard rather than our pre-*Morgan* case law. In her brief, Heath asserts a continuing violation back to 2011 when she returned from her one-year leave. The conduct that she identifies from that point forward is related: as in *Morgan*, "the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." 536 U.S. at 120–21; *see also Stewart*, 586 F.3d at 329 (focusing on same features). There is no evidence the university took any intervening act after Heath returned from sabbatical that would have severed the continuing nature of the acts. *Contrast Stewart*, 586 F.3d at 329 (continuing violation was severed when employer took "prompt remedial action to protect the claimant" by reprimanding the harasser and reassigning the complainant from the harasser's supervision). And the Defendants have pointed to no equitable consideration that should prevent the court from considering the full scope of the continuing conduct. We thus conclude that Heath has alleged a continuing course of conduct dating back to her return from leave in 2011.

No. 16-30625

**D.**

Because the magistrate judge's analysis of Heath's hostile work environment claims was dependent on her decision not to evaluate the full scope of the allegedly harassing conduct, we will remand for it to do so in the first instance. *See Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028–29 (5th Cir. 1988) (reversing and remanding summary judgment that turned on the wrong statute of limitations). That analysis will include determining whether Heath meets the summary judgment standard for showing that the harassment occurring over the broader period was on account of her sex (for the Title VII claim) and was severe and pervasive.

To assist that inquiry, we note that in determining that Heath had not shown that harassing conduct during the shorter period was based on her sex, the court erred in placing great weight on evidence that another female faculty member did not experience similar discrimination. There "is no token exception to anti-discrimination law." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587–88 (7th Cir. 2011); *see also Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992). Title VII focuses on "the protection of the individual employee, rather than the protection of the minority group as a whole." *Connecticut v. Teal,* 457 U.S. 440, 453–54 (1982). It does not "give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group." *Id.* at 455; *see also City of Los Angeles, Dep't of Water and Power v. Manhart,* 435 U.S. 702, 708–09 (1978); *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001). Indeed, Title VII "would have little force if an employer could defeat a claim of discrimination by treating a single member of the protected class in accordance with the law." *Diaz*, 653 F.3d at 587. Evidence that Defendants favorably treated another female faculty member might be relevant for a jury to consider on the ultimate question of discrimination, but

13

No. 16-30625

it is not dispositive at the summary judgment stage to warrant judgment for the employer as a matter of law. *See id.*

### III.

We affirm, however, the magistrate judge's dismissal of Heath's Title VII retaliation claim. Although Heath's complaint can be read to allege a claim of a hostile work environment based on retaliation,[5] the magistrate judge's summary judgment ruling treated the retaliation claim as one based on discrete acts. Heath does not challenge that characterization on appeal, so we must treat it the same way. Such a retaliation claim based on discrete acts cannot rely on a continuing violation theory. *Morgan*, 536 U.S. at 105, 113; *Hamic v. Harris Cty. W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006). So the earliest discrete acts of retaliation on which Heath can rely must have occurred within the 300 days before she complained to the EEOC.

That prevents Heath from showing the causal connection between her protected activity and any adverse employment action that is necessary to make out a prima facie case of retaliation. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). The temporal proximity of those events is the only way to show causation that was considered by the trial court or advanced by Heath. The gap in time is far too long to carry that burden without other evidence of causation. The protected activity is Heath's filing of the state lawsuit in 2009.[6] Given the limitations period, any adverse employment action must have occurred on June 5, 2012 or later. That three year period is not the "very close in time" connection we require "to

---

[5] We have not recognized a retaliatory hostile work environment cause of action. *See Bryan v. Chertoff*, 217 F. App'x 289, 293 (5th Cir. 2007). Twelve circuits have. *Id.* at 293 n.3 (collecting cases); *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (collecting cases).

[6] Heath now suggests she was retaliated against for other ways in which she objected to unlawful practices, including writing to the vice chancellor of academic affairs. Heath did not assert this argument in the district court and it therefore is forfeited.

No. 16-30625

establish causation by timing alone." *Porter,* 810 F.3d at 945; *see, e.g.*, *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (holding that gap of five months was not enough).

The dismissal of Heath's retaliation claim is therefore affirmed.

**\* \* \***

The judgment is AFFIRMED IN PART and REVERSED IN PART. The case is REMANDED for further proceedings.

15